UNITED STATES of America,
Appellee,

v.

Paul Salvatore ARMETTA, Appellant.

No. 394, Docket 30827.

United States Court of Appeals
Second Circuit.

Argued April 5, 1967.

Decided May 4, 1967.

Carol Ryan (Anthony F. Marra, New York City), for appellant.

Stephen F. Williams, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for S. D. New York; John S. Allee, Asst. U. S. Atty., of counsel), for appellee.

Before WATERMAN, FRIENDLY and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

Paul Salvatore Armetta appeals from his conviction, after trial before Judge Bonsal and a jury in the District Court for the Southern District of New York, of having unlawfully, wilfully and knowingly transported a motor vehicle in interstate commerce from Miami, Florida, to New York City, knowing the same to have been stolen, in violation of 18 U.S.C. § 2312. The sole ground of appeal is the receipt of two oral statements allegedly in violation of the rules laid down in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm the judgment because the admission into evidence of the statements was not objected to by the

defendant at trial and did not constitute "plain error."

The automobile, stolen from Miami on May 31, 1966, was in New York City a few days later with Richard Koslove driving and Armetta next to him in the front seat. A city patrolman, Lemmerman, testified that, in the course of making a traffic check shortly after midnight on June 4, he motioned the car to the curb. Koslove first complied but, evidently having a second thought, shot the vehicle forward, went through a red light and struck three other cars. When the automobile was finally stopped, neither Koslove nor Armetta could produce a driver's license or the car's registration. The officer arrested them for various traffic offenses and took them to the station house. A search of the car revealed items left in it by the owner, a Mr. Chet Gale, including some sheet music bearing his name. Early that morning Lemmerman filed a complaint charging Armetta with permitting an unlicensed driver to operate a vehicle in his custody. Koslove and Armetta were arraigned in the New York Criminal Court and an attorney from the Legal Aid Society was appointed to represent them; later they were rearrested on a charge of grand larceny and again arraigned. On June 27 Armetta was turned over to the custody of Agent Donahue of the FBI.

At the trial the prosecutor asked Patrolman Lemmerman what conversation had taken place between Armetta and Donahue at that time. When the defense objected on the ground that Armetta "was not apprised of his rights, or if he wanted counsel," the Assistant United States Attorney told the judge outside the hearing of the jury that Donahue would testify he had given "a full warning, to meet the requirements." The judge announced that he would allow Lemmerman to testify "subject to connection" and that defense counsel might "make a motion to strike and I will instruct the jury if he [the FBI agent] doesn't testify." [1] Lemmerman then gave the testimony quoted in the margin.[2] When Donahue took the stand, he described the warning in the manner also quoted in the margin[3] and added, over objection, that Armetta indicated that he understood. Donahue then testified, without objection, that Armetta stated "that he had stolen that vehicle and that he and an associate, Mr. Richard Koslove had taken turns driving this vehicle to New York City."

If the testimony of Lemmerman and Donahue is combined, the agent's warnings contained all the elements required by *Miranda*. When Armetta took the stand, he in no way challenged their testimony as to the warnings Donahue had given. His defense was that he had not

---

1. We do not commend this procedure, apparently drawn from conspiracy cases, for dealing with problems arising under Miranda. If Donahue had not given the expected testimony, striking Lemmerman's answer might not have effectively removed Armetta's admission from the jury's recollecton. Cf. United States v. Bozza, 365 F.2d 206, 214–218 (2 Cir. 1966). It would have been better to excuse the jury and ascertain what warnings were given before allowing Lemmerman to tell the jury what Armetta had said.

2. "He advised Paul Armetta of his rights, his right to counsel. At that time he had counsel and he understood all the questions, what he had told him; that he had a right to a lawyer, that anything he said could be used against him in a trial of law. If he couldn't afford a lawyer they would appoint a lawyer for him, and there is other things which I am not quite too sure of myself. I don't remember word for word what it was.

"The defendant stated that he understood everything and he told Mr. Donahue and myself that he had stolen the car in Florida; that both him and Richard Koslove had driven the car up from Florida, and when asked how long he had the car, he said, 'As long as it takes to drive from Florida to New York.' "

3. I advised him of my identity. I advised him that he did not have to make a statement, and any statement he did make could be used against him in a court of law. He had the opportunity to have an attorney present, prior to making any statement to me or anyone else of his choosing. I made no promises or threats at that time."

known of the theft until after he was arrested when he heard Koslove state falsely in the police station that Armetta had borrowed the car from a friend, and that he later succumbed to pleas of Koslove and their appointed counsel to take the blame because Koslove's previous criminal record would subject the latter to a heavy sentence whereas he would be let off.

▆▆▆ We find it unnecessary to decide whether the evidence here sufficed to meet the prosecution's "heavy burden" of showing a waiver, 384 U.S. at 475, 86 S.Ct. 1602. Armetta's counsel did not renew his objection or move to strike after Donahue testified to his warning and Armetta's admission, and the judge and the prosecutor had every reason to suppose counsel was satisfied that the *Miranda* requirements were met. United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). Although the trial occurred only seven weeks after the *Miranda* decision, the Supreme Court's ruling had been so eagerly awaited by lawyers concerned with criminal trials and was so widely publicized that there would be no basis for overlooking lack of objection on the ground of excusable neglect, see United States v. Del Llano, 354 F.2d 844, 847 n. 1 (2 Cir. 1965); Toland v. United States, 365 F.2d 304 (9 Cir. 1966); indeed, the record indicates that defense counsel had the point very much in mind throughout the trial. Nor is this a case for invoking the "plain error" rule, F.R.Cr.P. 52 (b). Even though the case differs from the single illustration put by the Court, 384 U.S. at 475, 86 S.Ct. 1602, 16 L.Ed. 2d 694, we are by no means convinced that the Government did not meet the burden imposed by *Miranda* for showing a waiver, especially with the assistance of Armetta's testimony that he wanted to talk although, on his version, only to protect Koslove.

The second alleged violation of *Miranda* must be disposed of in a similar fashion. As indicated, Armetta's defense was that he was "under the impression all the time that it [the car] was Richard's," with no suspicion awakened until Koslove started the car off after the patrolman's summons and, more particularly, when Koslove falsely told the police Armetta had borrowed it from a friend. He testified that the police "were asking a lot of questions" but "I didn't say anything." This crumbled rather speedily when the prosecutor developed in cross-examination, without objection, that Armetta himself had told the police he had borrowed the car from a friend, whom he could identify only as "Chet"—the first name of the owner, which he had seen on the sheet music. Lemmerman, recalled as a rebuttal witness, testified, again without objection, that when he asked the pair where they got the car, Armetta said he had borrowed it from a friend, whose name Armetta didn't know since the friendship had begun only a week before. The warning previously given by Lemmerman conformed to the requirements established nine days thereafter in *Miranda* in all respects but one; Lemmerman did not advise Armetta until later that the court would assign him counsel if he was too poor to pay for a lawyer.

▆▆▆ In view of the total lack of objection we could not reverse for admission of this evidence except by invoking the "plain error" rule, F.R.Cr.P. 52(b). Armetta contends receipt of the evidence was exactly that in light of the Supreme Court's explicit dictum that the *Miranda* requirements apply to exculpatory statements "used to impeach his [defendant's] testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication." 384 U.S. at 477, 86 S.Ct. at 1629. We are willing to assume *arguendo* that the dissenters in People v. Kulis, 18 N.Y.2d 318, 274 N.Y.S.2d 873, 221 N.E.2d 541 (1966), and the majority in State v. Brewton, 422 P.2d 581 (Or.Sup.Ct., Jan. 18, 1967), were generally right in thinking that

despite previous decisions as to waiver of the privilege by a criminal defendant's taking the stand, see Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), and 7 Wigmore, Evidence § 2276(2) (McNaughton rev. 1961), this statement in Miranda covers evidence adduced in cross-examination or in rebuttal as fully as in the prosecution's case in chief, except so far as Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), may be applicable. But we are by no means certain that the Court was addressing itself to the unusual situation where the defendant's testimony puts in issue the very question of what he told the police. If Armetta had testified not only that he had thought Koslove had borrowed the car but that he had repeatedly said so in the police station, it is hard to believe that even without a *Miranda* waiver the Government could not prove that in fact he had told the police an entirely different story of having borrowed the car himself. While *Miranda* may enable the defendant to testify generally as to his innocence free from the impeaching effect of a statement taken from him without the required warnings and waiver, this need not go so far as to include testimony concerning the statement itself any more than the type of embroidery at issue in *Walder,* a decision with which *Miranda* did not purport to deal. See United States v. Rivera, 346 F.2d 942 (2 Cir. 1965). While the instant case differs from the hypothetical one in that the statement was used to contradict Armetta's testimony that his attitude in the police station was one of stunned silence while Koslove's deviltry was becoming apparent to him, we are not at all sure that a distinction should or would be drawn. Certainly the inadmissibility of Armetta's statement that he had borrowed the car was not so "plain" that the judge should have been expected to intervene when defense counsel did not. In short, this episode, like the one previously discussed, does not come within the rule whereby "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation or judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), quoted with approval in Silver v. United States, 370 U.S. 717, 718 (1962).[4]

Judgment affirmed.

4. Two other points deserve mention although not raised by appellant. It can be argued that even if there is an exception to *Miranda* when the defendant puts his conduct in the station house at issue, the exception permits his prior inconsistent statement to be used only to impeach the credibility of his trial testimony and therefore it was error to permit Lemmerman to testify to the statement on rebuttal since Armetta himself admitted the inconsistency when cross-examined. See McCormick, Evidence 63 (1954). But any error in this respect would not be prejudicial as Lemmerman added nothing to what Armetta had already said. United States v. Jackson, 369 F.2d 401 (2 Cir. 1966). As to the trial court's failure to limit use of the June 4 statement to impeachment of the testimony Armetta gave on direct examination as to his attitude in the police station, the failure to raise this question at trial or even on appeal warrants our refusing to consider the issue at this juncture. United States v. Curry, 358 F.2d 904, 912 (2 Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966).