UNITED STATES of America,
Appellee,

v.

Joseph VANTERPOOL, Defendant-
Appellant.

No. 119, Docket 31505.

United States Court of Appeals
Second Circuit.

Argued Oct. 17, 1967.

Decided April 29, 1968.

Herman Blitz, New York City, for appellant.

Max Wild, Asst. U. S. Atty. (Roger J. Hawke, Asst. U. S. Atty., and Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, on the brief), for appellee.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Appellant was convicted on two counts of selling heroin in violation of 21 U.S.C. §§ 173 and 174 after a trial before the Honorable Irving Ben Cooper and a jury.[1] Concurrent sentences of ·five

---

1. Almost two months after the conclusion of the trial Judge Cooper on his own motion set aside the conviction and ordered a new trial on the ground that appellant's pre-arraignment statement should not have been admitted into evidence. A second trial was had before Judge Cannella and appellant was again convicted. On appeal, this court ruled that Judge Cooper lacked power to order a new trial on his

years inprisonment on each count were imposed.

■ Appellant's principal argument on this appeal is that his pre-arraignment statement to an assistant United States attorney should not have been admitted into evidence because the warnings he was given were inadequate under the standards set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We hold that the warnings were adequate and affirm the judgment.

On February 28, 1966 appellant was arrested and placed in the Federal House of Detention. The next morning he was taken to the office of an assistant United States attorney for questioning. Before any effort was made to elicit information about the crime charged, the following colloquy took place:

"Q. * * * Do you understand what the charge is? A. Yes.

Q. I want to advise you that you have a right to an attorney and to consult with a lawyer at this time. Do you have a lawyer? A. No, I don't have a lawyer.

Q. Do you have the money to hire a lawyer? A. No.

Q. The Commissioner who will fix bail in your case will also tell you about the steps that can be taken to assign a lawyer to you if you don't have the money to hire one. Is there anyone you would like to talk to now to get legal advice or to find out whether one can be contacted? A. There would be no way to reach them —just my wife.

Q. * * * I also want you to know that you don't have to answer any of the questions that I am going to ask you. You may remain silent and not say anything. Anything you do say may be used against you at a later time as evidence. Do you understand everything I have explained to you? A. Yes.

Q. If you wish to remain silent, you can do so and your silence will not be held against you for any reason. Do you understand that? A. Yes.

Q. How far did you get in school? A. As far as the 11th grade.

Q. You have not had any difficulty understanding these things that I have explained then? A. No."

Appellant then admitted that he had formerly used narcotics, that he had sold narcotics "a couple of times," and that he had met John Coursey, the agent to whom he was accused of selling heroin. However, he denied that he had sold narcotics to Agent Coursey.

At trial, the Government did not use or refer to appellant's statement in the presentation of its direct case. The defense was that appellant had acted as an informer and that he was accused by the agents solely because he had refused to introduce them to one Juan. When appellant, testifying in his own behalf, attempted to corroborate his defense by stating that he had told the assistant United State attorney that he had acted only as an informer, the government sought to introduce the statement to impeach him. Judge Cooper admitted the statement into evidence over appellant's objection and later charged the jury that it should be considered only on the issue of credibility.

■ The assistant United States attorney did not use the exact words of *Miranda* in warning appellant. The questioning took place before the *Miranda* decision was handed down.[2] However, the words of *Miranda* do not constitute

---

own motion after the expiration of the five day period within which the parties had the right to make such a motion under Rule 33 as it then read. The case was remanded to Judge Cooper for sentencing on the first conviction. United States v. Vanterpool, 377 F.2d 32 (2d Cir. 1967).

2. The *Miranda* rules apply in this case because the trial began after *Miranda* had been decided. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

a ritualistic formula which must be repeated without variation in order to be effective. Words which convey the substance of the warning along with the required information are sufficient.

 Under *Miranda* before a suspect who is in custody can be questioned he must be "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612.

Here appellant was informed that he had a right to remain silent and that anything he said could be used against him. He was told that he had a right "to consult with a lawyer at this time." He was told of his right to have assigned counsel if he could not afford to hire one. When he indicated willingness to proceed without counsel he was again advised that he need not do so.

Since we have determined that the warnings were adequate under *Miranda,* we do not reach the question whether in the absence of *Miranda* warnings the statement would have been admissible to impeach appellant's credibility. See United States v. Armetta, 378 F.2d 658, 661–662 (2d Cir. 1967); Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L. Ed. 503 (1954). However, we do not disagree with Judge Waterman's analysis of that point.

We have examined the other points raised in appellant's brief and find them to be without merit.

.Judgment affirmed.

WATERMAN, Circuit Judge (dissenting from the majority's opinion, but concurring in the result upon a different ground):

I am of the opinion that the warnings that my colleagues find to have been adequate were not adequate. Here the interrogation by the prosecuting officer of the defendant in custody occurred in New York City on March 1, 1966, at the very time that the four *Miranda* cases were being argued before the United States Supreme Court in Washington. Certiorari had been granted in the four cases in order "to give .concrete constitutional guidelines for law enforcement agencies and courts to follow." Miranda v. State of Arizona, 384 U.S. 436, 441–442, 86 S.Ct. 1602, 1611, 16 L.Ed.2d 694 (June 13, 1966). When these guidelines were handed down they were intended "to protect an accused's Fifth Amendment privilege in the face of interrogation." One of these guidelines is: "that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today." Id. at 471, 86 S.Ct. at 1626.

Writing for the Court the Chief Justice continued: "As with the warnings of the right to remain silent and that anything stated [by the accused] can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." Id. at 471–472, 86 S.Ct. at 1626.

Moreover, he later stated that "if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him *prior to any interrogation.*" Id. at 474, 86 S.Ct. at 1628 (emphasis supplied). To the same effect, id. at 479, 86 S.Ct. 1602.[1]

In view of these clear and unequivocal postulates I do not agree with my broth-

---

1. In their dissents in *Miranda* Justices Clark and Harlan were each of the opinion that FBI warnings issued in the very language in question in the present case would not meet the *Miranda* test because "the thrust of the Court's rules is to induce the suspect to obtain appointed counsel before continuing the interview." 384

ers that the interrogation of March 1 complied with the above-quoted guideline laid down three and one half months later. I would wish that it had, for the United States Attorney does not seem to have been overreaching here and if he had known what the *Miranda* holdings were to be, I am sure he would have complied with them. Therefore, one is indeed sorely tempted, even though the accused's trial began after *Miranda,*[2] and was therefore governed by the *Miranda* postulates, to hold that the interrogation, having been conducted pre-*Miranda,* ought to be construed to have complied with *Miranda* guidelines. Yet it is clear that Vanterpool was not informed of his right to have a lawyer present when questioned.

Nevertheless, despite my belief that the *Miranda* guidelines were not complied with, I join my colleagues in affirming the appellant's conviction.

The Government carefully excluded appellant's improperly obtained statement from the evidence it introduced in the prosecution's direct case. It was in no way referred to and its existence was not even hinted at. Appellant took the stand in his own defense and testified that he had been offered money by one of the agents to introduce the agent to narcotics peddlers so that the agent could buy from them, that the agents used him as an informer, that he introduced the agent to two peddlers and that the agents turned on him when he failed to introduce them to one Juan with the result that he was arrested. His own counsel then elicited from him that after the arrest and before his arraignment the accused had a conversation with someone in the United States Attorney's office who the appellant said asked him " * * * did the officers proposition

me, and did I ever do this before, did I ever take them anywhere to anybody, and I told him I only did it twice * *." Defense counsel then asked: "You say you only did it twice, what do you mean, did what twice?" Appellant answered: "You know, give them somebody." Counsel then queried: "Introduce them to somebody?" and appellant replied: "Yes."

Quite clearly the door was opened for the prosecution to bring out on cross-examination what was actually said at the interrogation, and government counsel on cross-examination elected to do just that—first by reading to the witness, over defense objection, Q. and A. sequences and asking the witness if these sequences took place, and finally, by offering into evidence the entire transcript of the interrogation, which, again over defense objections, became an exhibit in the case.

Though admittedly there is language in *Miranda* that indicates that even under the circumstances present at this trial the admission into evidence of the transcript of the interrogation violated the protection due this defendant under the Fifth Amendment, we have heretofore stated:

"But we are by no means certain that the Court was addressing itself to the unusual situation where the defendant's testimony puts in issue the very question of what he told the police. If Armetta had testified not only that he had thought Koslove had borrowed the car but that he had repeatedly said so in the police station, it is hard to believe that even without a *Miranda* waiver the Government could not prove that in fact he had told the police an entirely different story of having borrowed the car himself. While *Miranda* may enable the defendant to testify

U.S. at 521, 86 S.Ct. at 1652 (Justice Harlan) ; see also 384 U.S. at 500, 86 S.Ct. at 1641, n. 3 (Justice Clark). Undoubtedly this is an accurate characterization of the majority opinion. See portions of that opinion cited above and also see 384 U.S. at 465–466, 469–471, and 475, 86 S.Ct. 1602.

2. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966). The trial in United States v. Vanterpool also began on June 20, 1966.

generally as to his innocence free from the impeaching effect of a statement taken from him without the required warnings and waiver, this need not go so far as to include testimony concerning the statement itself any more than the type of embroidery at issue in *Walder*, a decision with which *Miranda* did not purport to deal. See United States v. Rivera, 346 F.2d 942 (2 Cir. 1965)." United States v. Armetta, 378 F.2d 658, 662 (2 Cir. 1967).[3]

It is true that in *Armetta* the issue of the admissibility of the defendant's improperly taken statement was first raised on appeal, while here objection to the admissibility was made at trial. Thus, in *Armetta* our court was necessarily faced with determining only whether the admission of the statement given to the police was "plain error," under Fed.R.Crim.P. 52(b). Nevertheless, even where timely objection has been made, it is difficult to see how the rule could be otherwise when the fact that there was an interrogation is first injected into the trial by the defendant himself.

While discussing the standards that must be met to establish the waiver of his constitutional rights by one who, without counsel, is in custody, the Court said in *Miranda*: "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." 384 U.S. at 475, 86 S.Ct. at 1628.

Surely, therefore, it would not be inconsistent with the great purposes behind the Fifth Amendment privilege, purposes so eloquently set forth by Mr. Justice Goldberg in Murphy v. Waterfront Com'n of New York Harbor, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), for a court to hold that the privilege is waived where a person who is represented by trial counsel initially injects into his trial in open court by his testimony under oath the substance of a conversation he had with government agents when he, likewise, was in custody and was without counsel. The defense knew that the Government could not introduce the in-custody statement as part of its direct case and that the Government had not done so. The defendant by his own testimony voluntarily and intentionally relinquished his right to have what he said at that interrogation remain hidden from the jury and the trial judge.

3. United States v. Armetta, as this case, presents a narrow issue not touched by the holding of Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The defendant here, and the defendant Armetta, in testimony elicited by defense counsel upon direct examination, brought into these cases for the first time the fact that there had been police interrogations, albeit ones violative of the *Miranda* proscriptions, and put in issue the very question of what, when so interrogated, the defendants told the police. See, for example, the treatment of *Armetta* in Groshart v. United States, 392 F.2d 172 (9 Cir. March 27, 1968), where the Ninth Circuit, although holding that *Miranda* has undercut *Walder*, distinguished *Armetta* from *Walder* and explicitly declined to consider, id. n. 4, whether in the *Armetta* situation a statement given at an interrogation violative of *Miranda* rules may be introduced into evidence by the Government on cross or in rebuttal.