Robert B. AUGER, Petitioner,

v.

Harold R. SWENSON, Warden, Respondent.

No. 1409.

United States District Court
W. D. Missouri,
Central Division.

Aug. 11, 1969.

Robert G. Duncan, Kansas City, Mo., for petitioner.

Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER DENYING HABEAS CORPUS

JOHN W. OLIVER, District Judge.

This State prisoner habeas corpus proceeding was filed immediately after the Supreme Court of Missouri affirmed petitioner's second degree burglary and stealing conviction on direct appeal in State v. Auger, Sup.Ct. of Mo.Div. 2, 1968, 434 S.W.2d 1. The parties stipulated that petitioner had exhausted his available state court remedies in regard to federal claims ruled on the merits by the Supreme Court of Missouri on its direct appeal. We deny habeas corpus for reasons we shall state.

### I.

Disposition of this case requires that we discuss principles enunciated in both Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). It is important to keep in mind, however, that petitioner appropriately exhausted his available state court remedy on direct appeal only in regard to the *Miranda* question presented to this Court.

This is not to say that petitioner's failure appropriately to exhaust his available state court remedies in regard to the Jackson v. Denno question that obviously lurked in this case from the outset would foreclose petitioner from later presenting that question to the state courts and, still later, to this Court in a second federal habeas corpus proceeding.

It is to say, however, that the only federal question to which this Court may, under familiar exhaustion principles (see White v. Swenson, (W.D.Mo. en banc 1966) 261 F.Supp. 42), properly determine is the very narrow *Miranda* question which petitioner presented to the state trial court and which the Supreme Court of Missouri decided on the merits.

### II.

Petitioner alleged the following grounds in support of his petition for federal habeas corpus:

(a) The trial court permitted the use of statements obtained from the defendant that were illegally and unconstitutionally obtained by the police officers at time of arrest, and in disregard of the defendant's desire to remain silent before such statements were taken; such statements consisting of oral admissions of guilt to the accusations charged.

(b) The trial court committed plain error and denied due process of law in instructing the jury that it could only either find the defendant not guilty or guilty of both burglary and stealing and in failing to instruct the jury that it could find the defendant guilty of stealing and not guilty of burglary.

(c) The petitioner was denied and deprived due process of the law because the trial court failed to make proper findings on the voluntariness of the confessions, contrary to the rule in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R. 3rd 1205, and because the Missouri Supreme Court "ORDERED" the trial court to return the petitioner back for a hearing on the voluntariness of the confessions used at his trial, months after the trial was over and the appeal had been taken, but before the Supreme Court reviewed the case on the pending appeal. All of which amounted to an illegal procedure on the part of the Missouri Supreme Court, denying the petitioner of the right to a new trial, where his conviction was unconstitutionally obtained.

■ The ground alleged in paragraph (b) in regard to the State trial court's instructions does not present a federal question. See Poulson v. Turner, (10th Cir. 1966) 359 F.2d 588 at 591, cert. denied 385 U.S. 905, 87 S.Ct. 219, 17 L.Ed.2d 136. It therefore will not be further noted. We turn to petitioner's *Miranda* claim.

### III.

Petitioner's *Miranda* claim was presented to the Supreme Court of Missouri as Point I in petitioner's Appellant's Brief. It stated:

The Court erred in denying appellant's pretrial motion, motion to strike and objections to the admission in evidence of the oral extrajudicial statements made by appellant to police officers which were unconstitutionally obtained from appellant after he had indicated that he did not desire to waive his right to remain silent and his right to have an attorney present during the interrogation *through his refusal to sign a written waiver.* [Emphasis ours].

Petitioner's argument in the Supreme Court of Missouri made clear that he was contending, solely as a matter of law, that the principles enunciated in *Miranda* required the police officers to cease all interrogation "upon the defendant's refusal to sign the waiver" (page 11 of petitioner's Appellant's Brief).

The Supreme Court of Missouri reliably found that "at the beginning of the trial defendant's counsel requested and were granted a hearing outside the presence of the jury on their motion seeking the exclusion from evidence of defendant's oral admissions." That court fairly summarized the testimony given at that hearing as follows:

The officers were questioned in great detail; defendant did not testify. * * * The full Miranda warnings were, according to the undisputed testimony, read to defendant at the

very inception of the first confrontation; at that time defendant denied all knowledge of the burglary. When he was moved to North Kansas City, the same warnings were again read to him in full, and he said that he understood them. When a waiver was presented, he declined to sign it, simply saying that his attorney had always told him not to sign anything. However, the record indicates that he followed this almost immediately with the statement that "he didn't mind talking about it," and that thereupon he proceeded to discuss all the details freely. The record is wholly barren of any evidence of coercion or duress. [434 S.W.2d 6].

■ Having carefully studied the trial transcript we find and determine that the facts stated were reliably found by the Supreme Court of Missouri (see pages 7, 8, 11, 15, 17, 20–22, 25, 58–60, 63, 65, 69, 71, 76–77, 91, 102 and 106 of trial transcript). In accordance with the discretion granted by Townsend v. Sain, 372 U.S. 293 at 318, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), we defer to and accept those findings.

The Supreme Court of Missouri appropriately recognized that the principles stated in both Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), were applicable to this case.

The sole question presented for this Court's determination is whether those recognized federal standards were properly applied to the established factual situation. The Supreme Court of Missouri stated that "[t]he last point to be considered is that defendant's oral statements in the nature of a confession should have been excluded *solely because* of his refusal to sign a written waiver." [Emphasis the court's].

It also stated that "unless the mere refusal to sign a written waiver indicated such, there was no evidence, at that hearing or at the trial, to show any form of coercion or duress."

Petitioner's brief in this Court establishes that the Supreme Court of Missouri correctly stated the extremely narrow *Miranda* question presented for its determination. Petitioner reiterates in this Court that "the question presented is not whether the confession was voluntary, but rather, whether or not the police had a right to continue to interrogate the petitioner after he refused to sign a waiver." That question obviously is a very narrow question.

The recent Eighth Circuit case of Klingler v. United States, (8th Cir. 1969) 409 F.2d 299, definitely stated that "*Miranda* does not require a written waiver, but only a waiver made 'voluntarily, knowingly and intelligently'. * * *" (409 F.2d at 308). The clear implication of that case is that proof that a waiver is not in writing, standing alone, does not establish as a matter of law that a particular waiver might not, as a matter of fact, have been made voluntarily, knowingly, and intelligently. This Court may not overlook the fact that petitioner freely conceded in the state trial court, in the Supreme Court of Missouri, and in this Court that his *Miranda* claim was and is bottomed solely on the notion that the rationale of *Miranda* commands, as a matter of law,

that a police officer may not question a defendant further unless the defendant signs a waiver of the rights guaranteed him by the rule of that case and that proof of the single fact that a tendered waiver was not signed is sufficient to bring the contended rule into play.

In spite of the fact that People v. Fioritto, (1968) 68 Cal.2d 714, 68 Cal. Rptr. 817, 441 P.2d 625, might be said to support petitioner's *Miranda* contention,[1] we believe that the Supreme Court of Missouri properly applied applicable federal standards to the facts reliably found in this case. We so find and determine.

Because this case, on its particular facts, presents an extremely *narrow Miranda* question, we shall fully state the reasons for our denial of federal habeas corpus relief in a manner that will prevent possible future misunderstanding of the scope of our decision in this case.

### IV.

The Supreme Court of Missouri has clearly indicated that it is fully cognizant of the scope of the rules enunciated in *Miranda* and that it would not have hesitated to have sustained petitioner's

---

1. The Supreme Court of California stated and held the following in *Fioritto*:

 After defendant was brought into the police station, he was administered the standard advice now required by the Miranda decision. The detective who so informed defendant then asked him to sign a waiver of his constitutional rights. Defendant refused. Almost immediately thereafter the officers confronted defendant with his two accomplices, both juveniles, who had confessed and had implicated defendant. In the presence of the officers, one of the juveniles and the defendant engaged in a heated argument over an eight-dollar loan. The juveniles were then taken out, and the detective again advised defendant of his rights, inquiring anew if he would like to sign the waiver and confess. Defendant then signed the waiver and confessed to the crime. * * *

 \* \* \* \* \*

 The central issue in this case, accordingly, is whether defendant's subsequent confession was admissible after he initially refused to waive his constitutional rights. * * *

 By his refusal to waive his constitutional rights initially, defendant indicated that he intended to assert his rights—the privilege had been once invoked—and all further attempts at police interrogation should have ceased. Although the confrontation of defendant with his two juvenile accomplices who had confessed injected a new factor into the questioning, the didactic language of the United States Supreme Court shows no disposition to permit subsequent interrogation in the absence of counsel even if authorities believe there has been a change of circumstances. Thus we have no alternative but to hold that the confession thereafter secured constituted inadmissible evidence at trial. [68 Cal.2d 717, 68 Cal.Rptr. 818, 441 P.2d 626]

claim in this case if it had been convinced that petitioner's refusal to sign the waiver, standing alone, must be considered as the evidentiary equivalent of a refusal on petitioner's part to talk about the offense without the benefit of counsel.

State v. Kelly, (Sup.Ct.Mo., Div. 2, 1969) 439 S.W.2d 487, decided subsequent to petitioner's direct appeal, presented a factual situation in which the defendant had received two *Miranda* warnings. When, however, the defendant was thereafter asked specifically whether he had anything "to say about the robbery," he, said, "No." The Supreme Court of Missouri then found that after the defendant's refusal to talk about the robbery, the police officer and the victim of the robbery (who was at the police station in connection with a line-up) took a coffee break and, with the defendant participating, the victim, rather than the police officer, continued the interrogation of the defendant. The victim, rather than the police officer, elicited answers to questions later adduced in evidence by both the police officer and the victim. The Supreme Court of Missouri quoted the following from *Miranda*:

In Miranda the Supreme Court of the United States said, 384 U.S. l.c. 473, 86 S.Ct. l.c. 1627, 16 L.Ed.2d l. c. 723: "Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning,* that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. [Emphasis ours.]

The Supreme Court of Missouri applied *Miranda*'s teaching to the factual situation stated and held:

It is obvious that the limitations on interrogation imposed by Miranda would be rendered meaningless if, under circumstances such as this, the only requirement would be that the officer in the interrogation room not direct any questions directly to the accused. We hold that Miranda is applicable and that the statements of the defendant about the wallet and its contents were not admissible. They were made *after defendant admittedly had stated his desire not to be questioned further about the robbery,* and there is nothing in the record to show any waiver by the defendant subsequent to his expression of that desire to terminate interrogation. [Emphasis ours]. [439 S.W.2d 489–490].

■ We recognize, of course, that the Supreme Court of Missouri's correct application of *Miranda* principles in State v. Kelly, a case decided subsequent to petitioner's case, does not establish that the principles of *Miranda* were correctly applied in petitioner's case. On the other hand, we believe that a federal court may appropriately look to cases decided both before and after the case under consideration in its required determination of whether a state court has appropriately articulated and properly applied a controlling federal standard.

Certainly, no one would question the examination of an earlier case which had, in effect, been incorporated by reference by citation and reliance. While admittedly there are differences in looking at a later decided case, we do not believe that later decided cases should be totally ignored. We believe that the treatment given *Miranda* by the Supreme Court of Missouri in State v. Kelly, although decided subsequent to its determination of petitioner's direct appeal, nevertheless lends a degree of support to our conclusion that it correctly decided the narrow *Miranda* question presented in this case.

The decision of the Supreme Court of Missouri can not fairly be said to be inconsistent with Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Nor do we believe that Frazier

v. Cupp requires that we disregard the earlier decided Eighth Circuit case of Klingler v. United States, *supra*, which held that *"Miranda* does not require a written waiver."

We believe that the fact that a particular defendant refused to sign a waiver is but one circumstance that must be taken into account when a question of voluntariness is appropriately presented.[2] We simply do not believe that proof of that circumstance, standing alone, is sufficient data upon which to base a finding that a particular defendant, as a matter of law, had not in fact voluntarily, knowingly, and intelligently waived his rights. We can conceive, for example, that a particular defendant could, in fact, voluntarily, knowingly, and intelligently waive his rights but would not necessarily sign any written waiver. Much that sort of thing happens when a plea of guilty is properly accepted. See and compare McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, decided June 2, 1969.

In this case, however, the only factual circumstance upon which the petitioner relied to establish a violation of his federally protected constitutional rights was the fact that the waiver tendered him was not signed. It can not be overemphasized that the only question presented the Missouri courts and the only question decided by this Court is that a defendant's refusal to sign the waiver, standing alone, can not be said, as a matter of law, to establish his right to federal habeas corpus relief.

Frazier v. Cupp and other cases illustrate that had petitioner's claim on direct appeal been more adequately stated, particularly had the question been raised that he had not in fact knowingly and intelligently waived his right to counsel, an entirely different question would have been presented.

Frazier v. Cupp, a state prisoner habeas corpus case, involved factual circumstances which showed that "after a few routine facts were ascertained," and after the petitioner had been asked a few other questions, he "was given a somewhat abbreviated description of his constitutional rights." The Supreme Court then stated:

He was told that he could have an attorney if he wanted one and that anything he said could be used against him at trial. Questioning thereafter became somewhat more vigorous, but petitioner continued to deny being with anyone but Rawls. At this point, the officer questioning petitioner told him, falsely, that Rawls had been brought in and that he had confessed. Petitioner still was reluctant to talk, but after the officer sympathetically suggested that the victim had started a fight by making homosexual ad-

---

2. See for example Judge Jameson's careful opinion in United States v. Bird, (D. C.Mont.1968) 293 F.Supp. 1265. In sustaining a motion for acquittal he noted the following as two of the circumstances, the totality of which required a finding that the defendant's confession was involuntary as a matter of law:

(7) later * * * the agent advised defendant of her rights and had her read aloud to him the statement of rights and waiver form, after which the defendant said, "I don't want to sign," whereupon the agent asked her if she wanted to talk anyway without an attorney and she agreed, this warning and oral waiver taking two minutes; (8) there is no evidence that

defendant was otherwise "offered counsel" and "intelligently and understandingly rejected the offer", or of any further explanation of her rights after she declined to sign the waiver.

In reliance upon the Eighth Circuit case of Evans v. United States, (8th Cir. 1967) 375 F.2d 355, 360, Judge Jameson held:

Based upon the "totality of circumstances" and my observation of the defendant at the trial, her background, her intelligence, her testimony as recounted in part in this opinion, I am unable to find that the Government has sustained its "heavy burden" of "demonstrating" a "voluntary and intelligent waiver." [293 F.Supp. 1275].

vances, petitioner began to spill out his story. Shortly after he began he again showed signs of reluctance and said, "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now." The officer replied simply, "You can't be in any more trouble than you are in now," and the questioning session proceeded. A full confession was obtained and, after further warnings, a written version was signed."

The case was tried after *Escobedo*, but before *Miranda*. The Supreme Court decided on the particular facts that the principles of *Escobedo* had not been violated. What was then said about *Miranda* was, of course, dictum. We believe, however, that the following is significant dictum:

> Petitioner argues that his statement about getting a lawyer was sufficient to bring *Escobedo* into play and that the police should immediately have stopped the questioning and obtained counsel for him. We might agree were *Miranda* applicable to this case, for in *Miranda* this Court held that "[i]f * * * [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444–445, 86 S.Ct. at 1612.

Our determination that the rationale of Frazier v. Cupp does not control this case does not mean that we do not view that decision as significant. We believe that it must be read in light of Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), which clearly shows that the Court is not retreating from what it held in *Miranda*. It was Mr. Justice Black who stated in *Orozco* that we "adhere to our well considered holding * * * in *Miranda*." And Mr. Justice Harlan, although "reluctantly," nevertheless concurred.

We view the attention directed in Frazier v. Cupp to the "somewhat abbreviated description" of a defendant's constitutional rights as a judicial red flag to the formalistic use of *"Miranda* cards" and to the contents of some cards apparently in current use.

Judge Matthes appropriately directed attention in Tucker v. United States, (8th Cir. 1967) 375 F.2d 363, 369, that courts must "zealously guard against an invasion [of a suspect's] constitutional right to remain silent." He pointed out in that case that in resolving questions of waiver, "the substance and not the form of the warnings should be of primary importance." Judge Hays, in United States v. Vanterpool, (2 Cir. 1968) 394 F.2d 697, 698, in a similar vein, stated that "the words of *Miranda* do not constitute a ritualistic formula."

While particular courts have approved the use of so-called *"Miranda* cards," they have made clear, as did Chief Justice Murphy of the Maryland Court of Special Appeals, 4 Cr. L. 2143, that "a so-called '*Miranda* card' is a sound practice *so long as the data on the card is in full compliance with Miranda standards"* [emphasis ours].

In this case the Supreme Court of Missouri stated that "[t]he full *Miranda* warnings were, according to the undisputed testimony, read to the defendant" (434 S.W.2d at 6). The record shows, as we shall presently state, that apparently the only warnings given petitioner were those printed on a *"Miranda* card" apparently in then current use.

█ We make clear that in this case we do not reach the question of whether the warnings read petitioner from the printed card were or were not "full *Miranda* warnings." Petitioner did not present that question to the state courts on his direct appeal; the rule of exhaustion requires that he do so before this Court exercises its habeas corpus jurisdiction.

We believe it appropriate, however, because the question is likely to arise in this or some other case, to put the question in focus.

## VI.

The *"Miranda* card" apparently read to the petitioner in this case stated:

You do not have to make any statement at this time, and have a right to remain silent. Anything you say can and will be used against you in a court of law. You're entitled to consult with an attorney before any interview and to have an attorney present at the time of interrogation. If you cannot afford an attorney, one will be appointed for you.

The information on that card should be contrasted with that contained on the card read to the defendant charged with a federal crime in Klingler v. United States. The federal card stated:

Before we ask you any questions, it is my duty to advise you of your rights. You have the right to remain silent. Anything you say can be used against you in court, or other proceedings. You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning. You may have an at-torney appointed by the United States Commissioner or the court to represent you if you cannot afford or otherwise *obtain* one. If *you* decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer. However, you may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire. [409 F.2d 307-308] [3]

■ We do not determine whether the state *Miranda* card or either of the federal *Miranda* cards, under all circumstances and in all cases, appropriately advises a defendant of his rights. The point we wish to make is that if a law enforcement officer, state or federal, is going to rely exclusively upon reading a defendant a printed *"Miranda* card" and a written waiver to establish that a particular defendant has been appropriately advised of his rights, he should make certain at a minimum that the card and

3. See also the F.B.I. *Miranda* card in use at the time United States v. Bird, *supra*, was decided. It stated:

YOUR RIGHTS

Place Poplar, Mont.
Time 8:33 A.M.
Date 6/22/68

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed "Not going to sign."
Witness Thomas E. Saunders, Special Agent F.B.I. 6/22/68
Witness R. D. Murray, Chief of Police Poplar, Mont.
Time 8:35 A.M.

In *Bird*, Judge Jameson appropriately noted that:

The statement and waiver may be read aloud in approximately one minute by a rapid reader. For a slow reader it takes from one and one-fourth to one and one-half minutes, and it seems probably from the observation of defendant in court that she would come under the "slow reader" category. This left little time to explain the rights, if any further explanation was required in view of defendant's prior statement that she did not want to talk and her refusal to sign the waiver. [293 F.Supp. 1274].

waiver he uses accurately states all the defendant's rights under the circumstances of the case in which it is used. In his determination of that question the law enforcement officer may not overlook *Miranda*'s express command that:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. [384 U.S. at 444–445, 86 S.Ct. at 1612].

We recognize that the problem of police training is a complicated and difficult problem. We believe, however, that it must also be recognized that appropriate and effective police training must be the first order of business if convictions based on confessions outside the presence of counsel are to be the sole or partial basis for the conviction of accused persons and that prosecutors, both State and federal, must give appropriate recognition to that fact of life in the administration of criminal justice today.

## VII.

The direction of the Court of Appeals for the District of Columbia in Frazier v. United States, D.C.Cir. 1969, 5 Cr.L. 2029, fortifies our view that petitioner is not entitled to federal habeas corpus relief in regard to his *Miranda* claim. That Court of Appeals refused to reverse the District Court outright. It merely remanded the case "for an evidentiary hearing and findings of fact on the validity of appellant's purported waiver." The following factual circumstances were involved:

> Detective Sergeant Robert T. Keahon ascertained that Frazier had been advised of his rights by the arresting officer, and then read to him a form that gave the Miranda warnings in some detail. Frazier said that he understood the form, did not want a lawyer, and would obtain one the next morning if necessary. He then signed a statement that he knew his rights and did not desire the assistance of a lawyer. Sergeant Keahon then started discussing with him the robbery of which he was suspected. Before he could utter more than a few words, Frazier confessed to not only the robbery under immediate investigation, but a previous robbery. Frazier went on to confess a series of other recent crimes. One of these, the Meridian Market holdup, one of which he was convicted.

> \* \* \* \* \* \*

> The record discloses that appellant objected when, as he began his string of confessions, Sergeant Keahon started to take notes on his confession. How strenuously he objected does not appear, but it is noteworthy that Keahon stopped writing at that point. He testified entirely from memory to the details of the confession, which was made a year before the trial began, explaining that "at the beginning of his admission, I started to write notes, and he stopped me and said: 'Don't write anything down. I will tell you about this but I don't want you to write anything down.'"

The Court of Appeals stated that "*Miranda* holds that a confession is admissible only if the accused affirmatively and understandingly waives his rights." It notes that "the Government bears a

'heavy burden' in attempting to show a waiver." It then stated that:

> The strong implication is that appellant thought his confession could not be used against him so long as nothing was committed to writing. If, as his avowed motive for confession suggests, he was brooding over a guilty conscience while the warnings were being given, he might well have failed to absorb their message. Or he may simply have been laboring under the common misapprehension that the police could not use in court anything he said unless they were able to introduce a written statement. Whatever the reason, the evidence raises a serious question, as to whether he intelligently waived his right to remain silent.

> \* \* \* \* \* \*

> Appellant's ban on note-taking inveighs against intelligent waiver, but this inference might be overcome, for example, if Sergeant Keahon admonished him that even an oral confession would be used against him, and appellant replied that he knew that but still did not want anything written down.

We believe that *Miranda*, when read in light of subsequent Supreme Court of the United States cases and other cases we have cited, requires that a trial judge, State or federal, must, on his motion, direct the original trial proceedings in all cases in which the prosecution relied upon a confession in a manner consistent with the principles enunciated in Jackson v. Denno, if subsequent piecemeal postconviction litigation is to be avoided. If the trial judge does not, on his own motion, require a full and complete evidentiary hearing out of the presence of the jury to ascertain both the adequacy of the *Miranda* warnings actually given in a particular case and to determine the validity of any alleged waiver of those rights, in full accordance with the applicable standard controlling the validity of a waiver as established in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), a particular defendant will be able to demand and receive such a hearing at some later date. And this is true regardless of whether the defendant did or did not object to the admission of the confession in evidence and regardless of whether the defendant made a specific request for such evidentiary hearing. See Gray v. Swenson, (W.D.Mo.1969) 302 F.Supp. 1162.

## VIII.

It does not follow, as we have said, that the principles just stated command that petitioner is entitled to federal habeas relief in his particular case. Petitioner in this case simply was not denied any relief by the state trial court or by the Supreme Court of Missouri in its determination of his direct appeal inconsistent with those principles. Had the petitioner in this case, while in the state courts, placed in dispute the adequacy of the *Miranda* warnings given him, or his actual understanding of those rights, or the validity of his alleged waiver of those rights, or the voluntariness of his confession, this Court would have an entirely different case before it.

Petitioner, however, did none of these things and the exhaustion rule requires that petitioner give the State courts an opportunity to pass on any or all of those questions on the merits before he again seeks to invoke the habeas corpus jurisdiction of this Court.

## IX.

Petitioner's third ground for federal habeas corpus relates to particular action taken by the Supreme Court of Missouri during the pendency of petitioner's direct appeal in that court. The Supreme Court of Missouri stating that it had allowed the petitioner "the benefit of the doubt" in regard to whether a "question of voluntariness" had in fact been raised in regard to the oral statements, sent the case back for the trial court "to consider *the evidence in the record* and make an express finding as to whether defendant's oral statements, as afore-

said, were or were not voluntary" [434 S.W.2d at 6–7, emphasis ours]. Certainly some of the statements made by defense counsel at the trial might be said to raise some doubt about the nature of petitioner's *Miranda* contention in spite of the statement made in Point I of the Appellant's Brief, quoted above. Defense counsel stated to the trial judge, for example that petitioner's statements should not be admitted in evidence "for the reason they are not voluntary within the meaning or contemplation of the recent Supreme Court case of Miranda versus State of Arizona" [p. 25 of the trial transcript]. The sixth point of his motion for new trial [p. 106 of the trial transcript] also used the word "voluntarily" somewhat loosely in stating the error allegedly committed by the trial court. That point stated:

> The Court erred in refusing to sustain defendant's objection to and motion to strike the extrajudicial statements of the defendant as testified to by Lieutenant Beck and Sergeant Ross since the evidence indicated as a matter of law that these extrajudicial statements were not made voluntarily but were made to the police officers without the defendant's being informed and understanding his constitutional rights and were made after the defendant indicated by his not signing any so-called Miranda waiver or making or refusing to sign any written statements that he intended to invoke his constitutional right against self-incrimination.

A close reading of that point, when considered in the light of petitioner's Appellant's Brief in the Supreme Court of Missouri, and particularly in light of defense counsel's admission "in oral argument [in the Supreme Court of Missouri] that his contention goes *one step beyond Miranda*" [434 S.W.2d at 6], clearly reveals, as we have stated, that his *Miranda* contention was based solely on a matter of law. It is nevertheless understandable that the Supreme Court of Missouri, in allowing the petitioner "the benefit of the doubt," to have

wanted to determine whether any real Jackson v. Denno question might be lurking in the record on direct appeal.

 Petitioner was not deprived of any federally protected right by the questioned order of the Supreme Court of Missouri. An entirely different question would, of course, have been presented if petitioner had pleaded or testified to facts in the trial court which, if true, would have raised a factual issue in regard to the voluntariness of his statements. Under those circumstances we are confident that the Supreme Court of Missouri would not have limited its Jackson v. Denno inquiry to a mere examination of the "evidence in the record" but would have, in accordance with the direction of Jackson v. Denno, Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), and particularly the second appeal in *Sims*, reported in 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), directed a new full plenary evidentiary hearing on the voluntariness issue. See also Gray v. Swenson, *supra*.

 The record in this case is clear that petitioner never attempted to present the question of whether his statements were or were not involuntary *as a matter of fact* to the trial court. And when given an opportunity, by reason of remand, to request that the trial court do something more than merely review the evidence in the trial record, petitioner did not do so. The fact that petitioner may now present all federal questions except his narrow *Miranda* contention ruled by this opinion to the state trial court in a Missouri Rule 27.26, V.A.M.R. motion does not authorize this Court to ignore the rule of exhaustion we have applied in this case.

Because the Supreme Court of Missouri only directed the state trial court to review the evidence already in the trial record, we must and do assume that its order was entered only for the commendable purpose of finding out whether a Jackson v. Denno question was or was not actually presented on direct appeal. Had that court intended to do

anything more we are confident that its order of remand would have been the same as the order entered in Frazier v. United States, *supra.* Exactly such an order was properly entered by the Supreme Court of Missouri in the recent case of State v. Taggert, (Mo.Sup.Ct., Div. 2) 443 S.W.2d 168, decided July 14, 1969.

The order entered by the Supreme Court of Missouri accordingly can not be said to violate any of petitioner's federally protected constitutional rights.

### ORDER

For the reasons stated, it is

Ordered that the petition for habeas corpus should be and is hereby denied.